1  David A. Tilem (Bar No. 103825)
   LAW OFFICES OF DAVID A. TILEM
2  206 North Jackson Street, Suite 201
   Glendale, California 91206
3  Tel: 818-507-6000 * Fax: 818-507-6800
   DavidTilem@TilemLaw.com
4
   Attorneys for Plaintiff STEVE DAVIS
5

6

7               UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                  LOS ANGELES DIVISION

10

11  In re:                          ) Case No. 2:09-bk-22514-SB
                                     )
12  **STEVE DAVIS**                  )
                                     )
13            Debtor.                )
                                     )
14  _____ )
                                     ) Adv No. 2:10-ap-01120-SB
15  **STEVE DAVIS,**                 )
                                     )
16            Plaintiff,             ) **NOTICE OF MOTION AND MOTION FOR**
                                     ) **LEAVE TO FILE FIRST AMENDED**
17  vs.                              ) **COMPLAINT AND RELATED RELIEF;**
                                     ) **POINTS AND AUTHORITIES AND**
18  **WASHINGTON MUTUAL BANK FA, a** ) **DECLARATIONS IN SUPPORT**
    **Federal Association, FRANK**   )
19  **MATRANGA, MICHAEL ROSENGARTEN,** ) Date: No Hearing Required
    **MANHATTAN FINISH, INC., et. al.,** ) Time:
20                                   ) CtRm:
              Defendants            )
21  _____ )

22  TO DEFENDANTS:

23      **NOTICE IS HEREBY GIVEN** that Plaintiff Steve Davis

24  ("Plaintiff") hereby moves for leave to file a First Amended

25  Complaint and related relief.  A copy of the proposed First Amended

26  Complaint is attached hereto.  Plaintiff further proposes that any

27  Answers to the Complaint be deemed Answers to the First Amended

28  Complaint and that the Court set a continued status conference date

1  not less than 45 days after this motion is granted.

2      **NOTICE IS FURTHER GIVEN** that Local Bankruptcy Rule 9013-

3  1(o)(1) requires that any response and request for hearing must be

4  filed with the Court and served on the Plaintiff and the Office of

5  the United States Trustee within 14 days after the date of service

6  of the notice.

7      The motion is based on this notice, the attached points and

8  authorities, the proposed First Amended Complaint, the attached

9  Declarations, and such other matters as may properly be presented

10  to the Court.  In summary, Plaintiff has recently learned that

11  Defendant Washington Mutual Bank FA ("WAMU") was closed by the

12  Office of Thrift Supervision and that WAMU's assets, including the

13  obligation which is the subject of this action, may have been sold

14  to JPMorgan Chase Bank, National Association ("JPMorgan").

15  Plaintiff seeks leave to amend his complaint for the sole purpose

16  of naming JPMorgan as an additional party Defendant and binding

17  JPMorgan to the Court's judgment.

18      WHEREFORE, Plaintiff prays for Orders as follows:

19      1.   Authorizing Plaintiff to file the proposed First Amended

20  Complaint;

21      2.   Deeming the proposed First Amended Complaint attached as

22  an Exhibit "D" hereto as having been filed;

23      3.   Deeming all Answers filed to the Complaint as Answers to

24  the First Amended Complaint;

25      4.   Setting a new status conference hearing for a date not

26  less than 45 days after this Motion is granted;

27      5.   Directing the issuance of an Alias Summons so that the

28  First Amended Complaint may be served on JPMorgan; and

1      6.    For such other and further relief as the Court deems

2 appropriate.

3 Dated: March 22, 2010                LAW OFFICES OF DAVID A. TILEM

4

5                              By: _____

6                              David A. Tilem, Attorneys
                             for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION AND BACKGROUND

4      Plaintiff is the owner of real property located at 1489 San

5  Pasqual, Pasadena, California ("the Property").  Prior to the

6  commencement of the above-referenced Chapter 11 proceeding,

7  Plaintiff constructed on the Property a large single family

8  residence which he hoped to sell for a profit.

9      As a result of market conditions, Plaintiff was unable to

10  obtain financing to complete the residence.  Construction was

11  sufficiently completed, however, for Plaintiff to obtain a

12  Certificate of Occupancy.

13      The Property is encumbered by various obligations including,

14  but not limited to a construction loan provided by Washington

15  Mutual Bank FA ("WAMU"), mechanics liens, income tax liens,

16  consensual loans from friends and family who were attempting to

17  assist Plaintiff to complete construction, property tax liens and

18  perhaps other obligations as well.

19      Plaintiff wants to file a Plan of Reorganization, but is

20  prevented from doing so because he cannot determine the relative

21  priority of the various claims secured by the Property.  This

22  adversary action seeks declaratory relief to resolve those

23  questions.

24      The Complaint in this adversary action was filed on January

25  29, 2010.[1]  With one exception, for the Los Angeles County

26

27

28
     [1]    A true and correct copy of the Complaint is attached to the
Declaration of David A. Tilem ("the Tilem Declaration") as Exhibit
"A".

1 Recorder, Plaintiff named all persons or entities identified on an

2 "Updated Preliminary Title Report" issued by Equity Title Company

3 on April 28, 2009.[2]  The Court issued the Summons which was served

4 on all Defendants identified in the Complaint.[3]

5      Shortly after March 5, 2010, Plaintiff received a copy of a

6 Proof of Claim filed by JPMorgan Chase Bank N.A. ("JPMorgan").  In

7 that Proof of Claim, JPMorgan asserts that Defendant WAMU was

8 closed on September 25, 2008 by the Office of Thrift Supervision

9 and that WAMU's assets, including the obligation which is the

10 subject of this action, were sold to JPMorgan.[4]

11      Because JPMorgan failed to record any notice of this

12 transaction in the chain of title relating to the Property,

13 Plaintiff was previously unaware that JPMorgan claimed any interest

14 in the Property.

15      Plaintiff seeks leave to amend the Complaint so that any claim

16 asserted by JPMorgan is considered by the Court, and the priority

17 of that claim can be determined with reference to all other claims

18 secured by the Property.

19 / / /

20 / / /

21 / / /

22

23      [2]   A true and correct copy of the Report is attached to the
24 Tilem Declaration as Exhibit "B".

25      [3]   Plaintiff is aware that service on the United States of
America Internal Revenue Service and the California Franchise Tax
Board may be defective.  Plaintiff has requested the issuance of an
26 Alias Summons so that the action may be properly served on those two
27 government agencies.

28      [4]   A true and correct copy of the relevant pages from the
JPMorgan Proof of Claim regarding the asset sale is attached to the
Tilem Declaration as Exhibit "C".

## II.

### RELIEF REQUESTED

As noted above, the Complaint in this case was filed on January 29, 2010. Answers have been received from three of the Defendants. No answer has been received from WAMU or JPMorgan.

Plaintiff seeks leave to file the proposed First Amended Complaint which is attached as Exhibit "D" to this Motion. The First Amended Complaint mirrors the Complaint in all respects except that JPMorgan is included as an additional party Defendant.

The motion also seeks ancillary relief such as deeming the proposed First Amended Complaint to be "filed", deeming answers filed to the Complaint to be answers to the First Amended Complaint, directing the issuance of an Alias Summons so that the First Amended Complaint can be served on JPMorgan, setting a date by which JPMorgan must respond to the First Amended Complaint and setting a new status conference.

## III.

### AUTHORITY

Bankruptcy Rule ("FRBP")7015 incorporates Civil Rule ("FRCP") 15 by reference. FRCP 15(a)(1) permits a party to amend its pleading once, as a matter of course so long as no responsive pleading has been served. In this case, however, three Answers to the Complaint have been served so FRCP 15(a)(1) is not applicable.

FRCP 15(a)(2) does permit amendment when Rule 15(a)(1) does not as follows:

> In all other cases, a party may amend its pleading only
> with the opposing party's written consent or the court's
> leave. The court should freely give leave when justice
> so requires.

1   As described above, Plaintiff was unaware of the purported

2   assignment of WAMU's interest in the Property to JPMorgan until

3   recently.   The adversary action is young and no other interests

4   would be prejudiced by the proposed amendment.   Finally, the

5   purpose of the action would be defeated if JPMorgan was not bound

6   by the Court's judgment.

7                              **IV.**

8                          **CONCLUSION**

9       FRBP 7015 incorporates FRCP 15 by reference and makes it

10  applicable to adversary actions.   FRCP 15(a)(2) authorizes the

11  proposed amendment "when justice requires".   The facts and

12  circumstances of this case make such amendment appropriate.

13  Dated: March 22, 2010              LAW OFFICES OF DAVID A. TILEM

14

15                          By: _____

16                              David A. Tilem, Attorneys
                                for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID A. TILEM

I, David A. Tilem, hereby declare and state as follows:

1.    I am an attorney at law licensed to practice and practicing before this Court.

2.    I make this Declaration based on my personal knowledge. If called upon to do so, I could and would testify to the matters set forth below.

3.    I am the lead attorney with the Law Offices of David A. Tilem handling the above-referenced Chapter 11 case for Steve Davis.

4.    On behalf of the Estate, I prepared and filed the Complaint in this adversary action on January 29, 2010.  A true and correct copy of the Complaint is attached as Exhibit "A".

5.    I based many of the allegations in the Complaint on an "Updated Preliminary Title Report" issued by Equity Title Company on April 28, 2009.  A true and correct copy of the Report is attached as Exhibit "B".

6.    With one exception, for the Los Angeles County Recorder, I named all persons or entities identified on the "Updated Preliminary Title Report".

7.    The Court issued the Summons which was served on all Defendants identified in the Complaint.[5]

8.    Shortly after March 5, 2010, I received a copy of a Proof of Claim filed by JPMorgan Chase Bank N.A. ("JPMorgan").  In that Proof of Claim, JPMorgan asserts that Defendant WAMU was closed on

---

[5]    Service on the United States of America Internal Revenue Service and the California Franchise Tax Board may be defective.  I have requested the issuance of an Alias Summons so that the action may be properly served on those two government agencies.

1   September 25, 2008 by the Office of Thrift Supervision and that

2   Washington Mutual Bank FA's assets, including the obligation which

3   is the subject of this action, were sold to JPMorgan.   True and

4   correct copies of the relevant pages from the JPMorgan Proof of

5   Claim regarding the asset sale are attached as Exhibit "C".

6        9.   Because JPMorgan failed to record any notice of this

7   transaction in the chain of title relating to the Property, it was

8   not picked up in the Title Report and I was previously unaware that

9   JPMorgan claimed any interest in the Property.

10       10.   I have prepared a First Amended Complaint which

11  identifies JPMorgan as a party Defendant. A true and correct copy

12  of the First Amended Complaint is attached as Exhibit "D".

13       I declare, under penalty of perjury under the laws of the

14  United States that the foregoing is true and correct and that this

15  Declaration was signed on March 2z, 2010 at Glendale, CA.

16

17

18                                    DAVID A. TILEM

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF STEVE DAVIS**

I, Steve Davis, hereby declare and state as follows:

    1.   I am the Debtor in the above-referenced Chapter 11 case.

    2.   I make this Declaration based on my personal knowledge. If called upon to do so, I could and would testify to the matters set forth below.

    3.   I am the owner of real property located at 1489 San Pasqual, Pasadena, California ("the Property"). Prior to the commencement of the above-referenced Chapter 11 proceeding, I constructed on the Property a large single family residence which I hoped to sell for a profit.

    4.   As a result of market conditions, I was unable to obtain financing to complete the residence. Construction was sufficiently completed, however, for me to obtain a Certificate of Occupancy.

    5.   The Property is encumbered by various obligations including, but not limited to a construction loan provided by Washington Mutual Bank FA ("WAMU"), mechanics liens, income tax liens, consensual loans from friends and family who were attempting to assist me to complete construction, property tax liens and perhaps other obligations as well.

    6.   I want to file a Plan of Reorganization, but I am prevented from doing so because I cannot determine the relative priority of the various claims secured by the Property.

/ / /

/ / /

/ / /

    7.   I have learned that JPMorgan Chase Bank N.A. ("JPMorgan")

1  now contends that it is the holder of the mortgage which I

2  originally borrowed through WAMU.  I was previously unaware that

3  JPMorgan asserted any claim or interest in the Estate.

4      I declare, under penalty of perjury under the laws of the

5  United States that the foregoing is true and correct and that this

6  Declaration was signed on March 15, 2010 at _Pasadena_____, CA.

7

8                                    _____

9                                    STEVE DAVIS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

``EXHIBIT A″

David A. Tilem (Bar No. 103825)
Sylvia S. Ho (Bar No. 247139)
LAW OFFICES OF DAVID A. TILEM
206 N. Jackson Street, Suite 201
Glendale, California 91206
Tel:(818) 507-6000   Fax:(818) 507-6800
Email: DavidTilem@TilemLaw.com
       SylviaHo@TilemLaw.com

Attorneys for Steve Davis

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**STEVE DAVIS,**<br><br>                    Debtor.<br>————————————————————<br>STEVE DAVIS,<br><br>              Plaintiff,<br><br>        vs.<br><br>WASHINGTON MUTUAL BANK, FA, a Federal Association, FRANK MATRANGA, MICHAEL ROSENGARTEN, MANHATTAN FINISH, INC., T.L. SHIELDS AND ASSOCIATES, INC., FINTON CONSTRUCTION, INC., dba Finton Associates, fdba Finton Associates, Inc., COVELLO PLASTERING CORP., TILENCOUNTERS, INC., VILLA PACIFIC CONTRACTORS, INC., PARAMOUNT SCAFFOLD, INC., BROADWAY A/C HEATING & SHEET METAL, GERALD H. RISSMAN as Trustee of the Living Trust Dated 11/19/96, JUDITH J. HOLT MCCARTHY REVOCABLE TRUST DATED 5/16/1991, CAROLINE BAKER INTERIOR DESIGN, SIERRA LANDSCAPE DEVELOPMENT, ACTION MILLWORK, RICHARD MACHEN, UNITED STATES OF AMERICA by and through its agency the Internal Revenue Service, GRANT & WEBER, | ) Case No. 2:09-22514-SB<br>)<br>) Chapter 11<br>)<br>)<br>)<br>)<br>)<br>)<br>) Adv. Case No. 09-        -SB<br>)<br>)<br>)<br>)<br>) COMPLAINT FOR DECLARATORY RELIEF<br>) TO DETERMINE PRIORITY AND EXTENT<br>) OF LIENS PURSUANT TO RULE 7001<br>) OF THE FEDERAL RULES OF<br>) BANKRUPTCY PROCEDURE<br>)<br>) (**CLASS CERTIFICATION REQUESTED**)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

02245\P\P5\20100106-Complaint.wpd                    1

```
 1  a Corporation, STATE OF          )
    CALIFORNIA FRANCHISE TAX BOARD,  )
 2  J.V. MCBURNEY CONCRETE           )
    CONSTRUCTION, INC., JOYCE J.     )
 3  CAMMILLERI TRUST DATED NOVEMBER  )
    16, 2001, TOM GONZALES, COURTESY )
 4  ELECTRIC WHOLESALE CORP., ECS    )
    ELECTRICAL, WHITE STAR           )
 5  PLASTERING CO., INC., CLASSICAL  )
    BUILDING ARTS, INC., OJ          )
 6  INSULATION, LP, JOSE A.          )
    SANDOVAL, and all others similar )
 7  situated,                        )
                                     )
 8           Defendants.             )
                                     )
 9  _____
```

10   Plaintiff alleges as follows:

11                 VENUE AND JURISDICTION

12       1.    This Court has jurisdiction over the action pursuant to

13   28 U.S.C. §§1334, 157 and the Order of Reference from the United

14   States District Court for the Central District of California.

15       2.    This is a "core" proceeding pursuant to 28 U.S.C.

16   §157(b)(2)(A), (B), (K) and (O).

17       3.    Venue of the action is properly with this Court pursuant

18   to 28 U.S.C. §1409(a).

19       4.    This case is filed pursuant to Rule 7001 of the Federal

20   Rules of Bankruptcy Procedure insofar as it seeks a determination

21   of the priority and extent of liens which are alleged to be secured

22   by property of the bankruptcy estate.

23                      THE PARTIES

24       5.    Plaintiff Steve Davis ("Davis" or "Plaintiff") is the

25   debtor and debtor-in-possession in the above-referenced Chapter 11

26   proceeding commenced by voluntary petition on May 21, 2009 ("the

27   Petition Date").

28       6.    Prior to the Petition Date, Davis was the owner of

14

1  certain real property located at 1475 San Pascual Street, Pasadena,
2  CA ("the Property").

3       7.    Upon filing this case, the Property became property of
4  the bankruptcy estate.

5       8.    Each of the Defendants asserts a lien secured by the
6  Property.    Such lien is reflected on a title report for the
7  Property dated "as of April 28, 2009."  A true and correct copy of
8  the title report is attached as Exhibit "A".

9       9.    The Defendants can be grouped into four categories: (1)
10 the mortgage lender ("WAMU"); (2) the Internal Revenue Service
11 ("IRS"); (3) the California Franchise Tax Board ("FTB"); and (4)
12 those holding mechanics liens ("Mechanics").

13                          <u>CLASS ISSUES</u>

14      10.   The Defendants not specifically identified by name are
15 Mechanics whose identities are presently unknown to Plaintiff.

16      a.    The number of such Mechanics is believed to be so
17      numerous as to make their joinder on an individual basis
18      impracticable.

19      b.    The questions of law and fact presented by this case
20      are identical for all Mechanics.

21      c.    the claims and defenses of the specifically
22      identified Mechanics are identical, or similar to the claims
23      and defenses of the unnamed Mechanics.

24      d.    Plaintiff is informed and believes, and thereon
25      alleges that the number of specifically identified Mechanics
26      can, and will fairly and adequately protect the interests of
27      all Mechanics, both identified and unidentified.

28      11.   Plaintiff seeks certification of the Mechanics as a class

1  to avoid any risk of dissimilar treatment between members of the
2  class.

3      12.  Plaintiff seeks certification of the Mechanics as a class
4  because adjudication of the issues presented by this action on
5  behalf of one Mechanic will, in all likelihood, be dispositive of
6  the interests of all other Mechanics.

7  THE ISSUES

8      13.  Depending upon certain events which may occur in the next
9  60 days, Plaintiff may propose a liquidating plan of reorganization
10 whereby the Property would be sold.

11     14.  If the Property is sold for a sufficient sum to pay all
12 claims in full, the issues arising under this complaint are moot.
13 If, however, the Property is sold for a sum which is not sufficient
14 to pay all claims in full, it is imperative that the relative
15 priority of the claims secured by the Property be determined so
16 that the sale proceeds can be distributed appropriately.

17     15.  Any liquidating plan which fails to provide for the
18 possibility that there will be insufficient funds to pay all claims
19 in full would be patently deficient.  Any disclosure statement
20 which fails to advise creditors what may occur if a sale of the
21 Property generates less than the amount needed to pay all claims in
22 full would likely fail the requirements of Bankruptcy Code §1125.

23     16.  By this action, Plaintiff seeks a determination from the
24 Court regarding the priority and extent of claims asserted by the
25 Defendants.

26 THE FACTS

27     17.  Plaintiff acquired the Property in July, 2002 with the
28 intent to construct a luxury single family residence.  The Property

16

1  was owned free and clear before the start of any construction.

2      18.   On or about August, 2003 Plaintiff borrowed $1.4 million

3  from Washington Mutual Bank, FA, a Federal Association ("WAMU") to

4  begin construction ("the Initial Loan").

5      19.   Grading and the exportation of dirt began on the Property

6  at or about the same time, August, 2003.

7      20.   In late 2006 Plaintiff approached WAMU about re-writing

8  the loan to provide sufficient funding to complete the construction

9  project ("the Second Loan").

10     21.   WAMU agreed and made a Second Loan to Plaintiff in the

11 sum of $3 million.  Loan documents for the Second Loan were duly

12 executed and a deed of trust in favor of WAMU was recorded on

13 December 1, 2006.

14     22.   The Initial Loan was satisfied with a portion of the

15 proceeds from the Second Loan.

16     23.   As a result of many factors, including the recent slide

17 in property values and lending crunch, Plaintiff was unable to

18 complete construction on the Property within the projected budget

19 and WAMU stopped providing funding under the Second Loan.

20     24.   Although construction was not completed, construction had

21 progressed to the point where Plaintiff has secured a Certificate

22 of Occupancy for the Property.  What remains are so-called "punch

23 list items".

24     25.   Plaintiff has marketed the Property and obtained a series

25 of offers in excess of $6.2 million, including two or three in

26 excess of $7 million.  None, however, has thus far resulted in the

27 payment of an earnest money deposit or the completion of a sale.

28     26.   Plaintiff continues to receive offers for the Property,

1  but there is no guaranty that any sale will result in net proceeds

2  which are sufficient to pay all claims in full.

3      27.  Plaintiff is informed and believes, and thereon alleges

4  that disputes do, or may exist between WAMU, IRS, FTB and the

5  Mechanics with respect to the relative priority of their liens

6  secured by the Property.

7      28.  Plaintiff seeks a determination by this Court setting

8  forth the relative priority of claims held by the Defendants so

9  that Plaintiff can properly provide for each Defendant in its Plan

10 of Reorganization.

11     WHEREFORE Plaintiff prays as follows:

12     1.   For certification of the Mechanics as a class.

13     2.   For a judgment declaring the relative priority and extent

14 of the lien against the Property held by each of the Defendants

15 including, but not limited to the Mechanics.

16     3.   For such other and further relief as the Court deems

17 just.

18 Dated: January 29, 2010              LAW OFFICES OF DAVID A. TILEM

19

20                                      By: _____

21                                      DAVID A. TILEM, Attorneys
                                        for Steve Davis

22

23

24

25

26

27

28

18

# Exhibit "A"

Exhibit "A"

# EQUITY TITLE COMPANY

425 W. BROADWAY SUITE 300
GLENDALE, CA 91204
PHONE: (800) 373-7500
FAX: (818) 242-9176

DATED AS OF APRIL 28, 2009 AT 7:30 A.M.

**STEVE DAVIS ESTATES**                          YOUR NO.:
**101 S. MADISON**                               PROPERTY ADDRESS: APN: 5736-005-028
**PASADENA, CA 91001**

**ATTENTION:  STEVE DAVIS**                      ORDER NO.: LA0873703
                                                 TITLE OFFICER: DON R BENDER

---

### "UPDATED PRELIMINARY REPORT"

IN RESPONSE TO THE ABOVE REFERENCED APPLICATION FOR A POLICY OF TITLE INSURANCE, **EQUITY TITLE COMPANY** HEREBY REPORTS THAT IT IS PREPARED TO ISSUE, OR CAUSE TO BE ISSUED, AS OF THE DATE HEREOF, A POLICY OR POLICIES OF TITLE INSURANCE DESCRIBING THE LAND AND THE ESTATE OR INTEREST THEREIN HEREINAFTER SET FORTH, INSURING AGAINST LOSS WHICH MAY BE SUSTAINED BY REASON OF ANY DEFECT, LIEN OR ENCUMBRANCE NOT SHOWN OR REFERRED TO AS AN EXCEPTION BELOW OR NOT EXCLUDED FROM COVERAGE PURSUANT TO THE PRINTED SCHEDULES, CONDITIONS AND STIPULATIONS OF SAID POLICY FORMS.

THE PRINTED EXCEPTIONS AND EXCLUSIONS FROM THE COVERAGE OF SAID POLICY OR POLICIES ARE SET FORTH IN EXHIBIT B ATTACHED. THE POLICY TO BE ISSUED MAY CONTAIN AN ARBITRATION CLAUSE. WHEN THE AMOUNT OF INSURANCE IS LESS THAN THAT SET FORTH IN THE ARBITRATION CLAUSE, ALL ARBITRABLE MATTERS SHALL BE ARBITRATED AT THE OPTION OF EITHER THE COMPANY OR THE INSURED AS THE EXCLUSIVE REMEDY OF THE PARTIES. LIMITATIONS ON COVERED RISKS APPLICABLE TO THE CLTA AND ALTA HOMEOWNER'S POLICIES OF TITLE INSURANCE WHICH ESTABLISH A DEDUCTIBLE AMOUNT AND A MAXIMUM DOLLAR LIMIT OF LIABILITY FOR CERTAIN COVERAGES ARE SET FORTH IN THE POLICY. COPIES OF THE POLICY FORMS SHOULD BE READ.  THEY ARE AVAILABLE FROM THE OFFICE THAT ISSUED THIS REPORT.

**PLEASE READ THE EXCEPTIONS SHOWN OR REFERRED TO BELOW AND THE EXCEPTIONS AND EXCLUSIONS SET FORTH IN EXHIBIT A OF THIS REPORT CAREFULLY.  THE EXCEPTIONS AND EXCLUSIONS ARE MEANT TO PROVIDE YOU WITH NOTICE OF MATTERS WHICH ARE NOT COVERED UNDER THE TERMS OF THE TITLE INSURANCE POLICY AND SHOULD BE CAREFULLY CONSIDERED.**

**IT IS IMPORTANT TO NOTE THAT THIS PRELIMINARY REPORT IS NOT A WRITTEN REPRESENTATION AS TO THE CONDITION OF TITLE AND MAY NOT LIST ALL LIENS, DEFECTS AND ENCUMBRANCES AFFECTING TITLE TO THE LAND.**

THIS REPORT (AND ANY SUPPLEMENTS OR AMENDMENTS HERETO) IS ISSUED SOLELY FOR THE PURPOSE OF FACILITATING THE ISSUANCE OF A POLICY OF TITLE INSURANCE AND NO LIABILITY IS ASSUMED HEREBY.  IF IT IS DESIRED THAT LIABILITY BE ASSUMED PRIOR TO THE ISSUANCE OF A POLICY OF TITLE INSURANCE, A BINDER OR COMMITMENT SHOULD BE REQUESTED.

THE FORM OF POLICY OF TITLE INSURANCE CONTEMPLATED BY THIS REPORT IS:

[ ]    CALIFORNIA LAND TITLE ASSOCIATION/AMERICAN LAND TITLE ASSOCIATION
       HOMEOWNERS POLICY

[ ]    AMERICAN LAND TITLE ASSOCIATION LOAN POLICY

[X]    CALIFORNIA LAND TITLE ASSOCIATION STANDARD POLICY

[ ]    AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL POLICY

ORDER NO. LA0873703

## SCHEDULE A

THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**A FEE AS TO PARCEL A, AN EASEMENT AS TO PARCEL B.**

TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

**STEVEN T. DAVIS, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**SEE EXHIBIT "A" ATTACHED HERETO**

21

ORDER NO. LA0873703

## EXHIBIT "A"

**PARCEL A:**

PARCEL 3 TOGETHER WITH THE EASTERLY 4.90 FEET AND THE NORTHERLY 20.00 FEET OF PARCEL 2 OF PARCEL MAP 25562 RECORDED IN BOOK 302 PAGES 51 AND 52 OF PARCEL MAPS, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, TO BE HELD AS A PART OF A SINGLE PARCEL COMPRISED OF SAID PORTIONS OF PARCEL 2 AND ALL OF PARCEL 3 OF SAID PARCEL MAP PURSUANT TO THE LOT LINE ADJUSTMENT APPROVED BY THE CITY OF PASADENA BY THAT CERTIFICATE OF COMPLIANCE RECORDED ON JUNE 12, 2002 AS INSTRUMENT NO. 02-1340627, OF OFFICIAL RECORDS.

**PARCEL B:**

AN EXCLUSIVE EASEMENT APPURTENANT THERETO FOR USE AS A PRIVATE DRIVEWAY FOR INGRESS, EGRESS, LANDSCAPING, AND LIGHTING IN AND OVER A PORTION OF PARCEL 2 OF SAID PARCEL MAP, DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID PARCEL 1 OF SAID PARCEL MAP; THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL MAP, SOUTH 89 DEGREES 39' 15" EASE 132.01 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING ALONG SAID SOUTHERLY LINE, SOUTH 89 DEGREES 39' 15" EAST 7.60 FEET TO THE POINT OF INTERSECTION OF SAID SOUTHERLY LINE WITH A LINE PARALLEL WITH AND 19.90 FEET WESTERLY OF THE EASTERLY LINE OF SAID PARCEL MAP; THENCE NORTHERLY ALONG SAID PARALLEL LINE NORTH 00 DEGREES 02' 39" EAST 324.93 FEET TO THE SOUTHERLY LINE OF THE NORTHERLY 20.00 FEET OF SAID PARCEL 2; THENCE NORTH 89 DEGREES 39' 15" WEST 9.73 FEET; THENCE SOUTH 00 DEGREES 02' 39" WEST 104.93 FEET; THENCE SOUTH 00 DEGREES 08' 20" EAST 119.46 FEET; THENCE NORTH 89 DEGREES 51' 33" EAST 1.36 FEET; THENCE SOUTH 00 DEGREES 08' 27" EAST 11.00 FEET; THENCE SOUTH 89 DEGREES 51' 40" WEST 1.36 FEET; THENCE SOUTH 00 DEGREES 08' 20" EAST 63.03 FEET; THENCE SOUTH 03 DEGREES 12' 55" EAST 26.58 FEET; TO THE TRUE POINT OF BEGINNING. AS CONVEYED IN THE DEED RECORDED APRIL 3, 2003, AS INSTRUMENT NO. 03-941134, UPON THE TERMS, CONDITIONS AND PROVISIONS AS THEREIN SET FORTH.

***END OF LEGAL DESCRIPTION***

3

22

ORDER NO. LA0873703

**SCHEDULE B**

AT THE DATE HEREOF EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM DESIGNATED ON THE FACE PAGE OF THIS REPORT WOULD BE AS FOLLOWS:

A.   GENERAL AND SPECIAL TAXES FOR THE FISCAL YEAR 2009-2010, A LIEN NOT YET DUE OR PAYABLE.

B.   GENERAL AND SPECIAL TAXES FOR THE FISCAL YEAR 2008-2009

| | | |
|---|---|---|
| TOTAL: | $9,189.42 | |
| FIRST INSTALLMENT: | $4,594.71 | PAID |
| PENALTY: | $0.00 | |
| SECOND INSTALLMENT: | $4,594.71 | PAID |
| PENALTY: | $0.00 | |
| | | |
| ASSESSED VALUATION: | | |
| LAND VALUE: | $826,978.00 | |
| IMPROVEMENTS: | $0.00 | |
| EXEMPTION: | $0.00 | |
| | | |
| CODE AREA: | 07500 | |
| A. P. NO.: | 5736-005-028 | |

C.   THE LIEN OF SUPPLEMENTAL TAXES ASSESSED PURSUANT TO CHAPTER 3.5 COMMENCING WITH SECTION 75 OF THE CALIFORNIA REVENUE AND TAXATION CODE.

1.   WATER RIGHTS, CLAIMS OR TITLE TO WATER, WHETHER OR NOT SHOWN BY THE PUBLIC RECORDS.

2.   AN EASEMENT AS SHOWN ON THE MAP OF TRACT NO. 25562.

FOR:                PUBLIC UTILITY AND INCIDENTAL PURPOSES.

AFFECTS:            THAT PORTION OF SAID LAND AS SHOWN ON THE MAP OF SAID TRACT.

ORDER NO. LA0873703

3.  A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
    AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $3,000,000.00 |
| DATED: | NOVEMBER 24, 2006 |
| TRUSTOR: | STEVEN T. DAVIS, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY |
| TRUSTEE: | FIRST AMERICAN TITLE COMPANY |
| BENEFICIARY: | WASHINGTON MUTUAL BANK, FA., A FEDERAL ASSOCIATION |
| RECORDED: | DECEMBER 1, 2006 AS INSTRUMENT NO. 20062666818, OF OFFICIAL RECORDS. |
| LOAN NO.: | 03-2126-073665444-3 |

A DOCUMENT RECORDED NOVEMBER 17, 2008 AS INSTRUMENT NO. 20082024116, OF
OFFICIAL RECORDS, PURPORTEDLY SUBSTITUTES CALIFORNIA RECONVEYANCE
COMPANY AS TRUSTEE UNDER THE DEED OF TRUST.

A NOTICE OF DEFAULT RECORDED NOVEMBER 17, 2008 AS INSTRUMENT NO.
20082024117, OF OFFICIAL RECORDS.

A NOTICE OF TRUSTEE'S SALE RECORDED FEBRUARY 20, 2009 AS INSTRUMENT NO.
20090236803, OF OFFICIAL RECORDS.

4.  A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
    AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $350,000.00 |
| DATED: | DECEMBER 6, 2007 |
| TRUSTOR: | STEVEN T DAVIS |
| TRUSTEE: | CHICAGO TITLE COMPANY, A CALIFORNIA CORPORATION |
| BENEFICIARY: | FRANK MATRANGA |
| RECORDED: | DECEMBER 10, 2007 AS INSTRUMENT NO. 20072697778, OF OFFICIAL RECORDS. |
| LOAN NO.: | NONE SHOWN |

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING:

   A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
      RECONVEYANCE.

   B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
      RECONVEYANCE EXECUTED BY THE BENEFICIARY.

   C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
      THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

ITEM NO. 4, CONTINUED

24

ORDER NO. LA0873703

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE REQUIRED.

5.   A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER AMOUNTS OR OBLIGATIONS SECURED THEREBY

AMOUNT:        $487,000.00
DATED:         JANUARY 2, 2008
TRUSTOR:       STEVEN T DAVIS
TRUSTEE:       FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION
BENEFICIARY:   FRANK MATRANGA
RECORDED:      JANUARY 3, 2008 AS INSTRUMENT NO. 20080009826, OF OFFICIAL RECORDS
LOAN NO.:      NONE SHOWN

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING:

A)  THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR RECONVEYANCE.

B)  ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE EXECUTED BY THE BENEFICIARY.

C)  FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS POSSIBLE.

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE REQUIRED.

6

25

ORDER NO. LA0873703

6.  A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
    AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $140,000.00 |
| DATED: | FEBRUARY 21, 2008 |
| TRUSTOR: | STEVEN T DAVIS |
| TRUSTEE: | FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION |
| BENEFICIARY: | FRANK MATRANGA |
| RECORDED: | FEBRUARY 22, 2008 AS INSTRUMENT NO. 20080313039, OF OFFICIAL RECORDS |
| LOAN NO.: | NONE SHOWN |

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
<u>REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING</u>:

A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
   RECONVEYANCE.

B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
   RECONVEYANCE EXECUTED BY THE BENEFICIARY.

C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
   THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT
AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE
TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR
EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE
BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE
REQUIRED.

7.  A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
    AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $165,000.00 |
| DATED: | MARCH 17, 2008 |
| TRUSTOR: | STEVE DAVIS |
| TRUSTEE: | FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION |
| BENEFICIARY: | MICHAEL ROSENGARTEN |
| RECORDED: | MARCH 18, 2008 AS INSTRUMENT NO. 20080461782, OF OFFICIAL RECORDS. |
| LOAN NO.: | NONE SHOWN |

ITEM NO. 7, CONTINUED

26

ORDER NO. LA0873703

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
<u>REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING</u>:

    A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
       RECONVEYANCE.

    B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
       RECONVEYANCE EXECUTED BY THE BENEFICIARY.

    C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
       THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT
AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE
TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR
EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE
BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE
REQUIRED.

8. A CLAIM OF LIEN

    LIEN CLAIMANT:    MANHATTAN FINISH, INC.
    AMOUNT:          $6,539.00
    RECORDED:       MARCH 20, 2008 AS INSTRUMENT NO. 20080484621, OF OFFICIAL
                      RECORDS

AND RECORDED JUNE 18, 2008, AS INSTRUMENT NO. 08-1085982, OF OFFICIAL
RECORDS.

9. A CLAIM OF LIEN

    LIEN CLAIMANT:    T L SHIELD AND ASSOCIATES, INC.
    AMOUNT:          $24,921.44
    RECORDED:       APRIL 17, 2008 AS INSTRUMENT NO. 20080676603, OF OFFICIAL
                      RECORDS

10. A CLAIM OF LIEN

    LIEN CLAIMANT:    FINTON ASSOCIATES
    AMOUNT:          $76,868.52
    RECORDED:       APRIL 21, 2008 AS INSTRUMENT NO. 20080692450, OF OFFICIAL
                      RECORDS

11. A CLAIM OF LIEN

    LIEN CLAIMANT:    COVELLO PLASTERING CORP.
    AMOUNT:          $23,959.50
    RECORDED:       MAY 8, 2008 AS INSTRUMENT NO. 20080819213, OF OFFICIAL
                      RECORDS

ORDER NO. LA0873703

12. A CLAIM OF LIEN

LIEN CLAIMANT:    TILENCOUNTERS INC.
AMOUNT:    $65,300.00
RECORDED:    MAY 16, 2008 AS INSTRUMENT NO. 20080876229, OF OFFICIAL
RECORDS

13. A CLAIM OF LIEN

LIEN CLAIMANT:    VILLA PACIFIC CONTRACTORS, INC.
AMOUNT:    $15,860.00
RECORDED:    MAY 21, 2008 AS INSTRUMENT NO. 20080901659, OF OFFICIAL
RECORDS

14. A CLAIM OF LIEN

LIEN CLAIMANT:    PARAMOUNT SCAFFOLD INC.
AMOUNT:    $6,330.45
RECORDED:    JUNE 10, 2008 AS INSTRUMENT NO. 20081024114, OF OFFICIAL
RECORDS

15. A CLAIM OF LIEN

LIEN CLAIMANT:    BROADWAY A/C HEATING & SHEET METAL
AMOUNT:    $23,330.00
RECORDED:    JULY 24, 2008 AS INSTRUMENT NO. 20081326078, OF OFFICIAL
RECORDS

AND RECORDED OCTOBER 31, 2008, AS INSTRUMENT NO. 08-1931539, OF OFFICIAL
RECORDS.

16. A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
AMOUNTS OR OBLIGATIONS SECURED THEREBY

AMOUNT:    $600,000.00
DATED:    JULY 25, 2008
TRUSTOR:    STEVEN DAVIS
TRUSTEE:    FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA
CORPORATION
BENEFICIARY:    GERALD H. RISSMAN, LIVING TRUST DATED 11/19/96
RECORDED:    AUGUST 8, 2008 AS INSTRUMENT NO. 20081426526, OF OFFICIAL
RECORDS
LOAN NO.:    NONE SHOWN

ITEM NO. 16, CONTINUED

9

28

ORDER NO. LA0873703

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
<u>REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING</u>:

    A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
       RECONVEYANCE.

    B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
       RECONVEYANCE EXECUTED BY THE BENEFICIARY.

    C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
       THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT
AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE
TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR
EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE
BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE
REQUIRED.

17. NOTICE OF PENDENCY OF ACTION

| | |
|---|---|
| COURT: | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, NORTHEAST DISTRICT – PASADENA COURTHOUSE. |
| CASE NO.: | 08C01855 |
| PLAINTIFF: | COVELLO PLASTERING CORPORATION, A CALIFORNIA CORPORATION |
| DEFENDANT: | STSC, INC., A CALIFORNIA CORPORATION; STEVEN T. DAVIS, AN INDIVIDUAL; TERESA L. DAVIS, AN INDIVIDUAL; WASHINGTON MUTUAL BANK, FA, A SAVINGS ASSOCIATION; AND DOES 1 THROUGH 70, INCLUSIVE |
| PURPOSE: | FORECLOSURE OF A MECHANICS' LIEN |
| RECORDED: | AUGUST 11, 2008 AS INSTRUMENT NO. 20081440254, OF OFFICIAL RECORDS |

18. A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $85,000.00 |
| DATED: | AUGUST 11, 2008 |
| TRUSTOR: | STEVE DAVIS |
| TRUSTEE: | FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION |
| BENEFICIARY: | JUDITH J. HOLT MCARTHY REV TRUST DTD 05/16/1991 |
| RECORDED: | AUGUST 14, 2008 AS INSTRUMENT NO. 20081464031, OF OFFICIAL RECORDS. |
| LOAN NO.: | NONE SHOWN |

ITEM NO. 18, CONTINUED

ORDER NO. LA0873703

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING:

    A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
       RECONVEYANCE.

    B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
       RECONVEYANCE EXECUTED BY THE BENEFICIARY.

    C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
       THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT
AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE
TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR
EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE
BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE
REQUIRED.

19. A DEED OF TRUST TO SECURE AN ORIGINAL INDEBTEDNESS AND ANY OTHER
     AMOUNTS OR OBLIGATIONS SECURED THEREBY

| | |
|---|---|
| AMOUNT: | $210,000.00 |
| DATED: | AUGUST 11, 2008 |
| TRUSTOR: | STEVE DAVIS |
| TRUSTEE: | FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION |
| BENEFICIARY: | MICHAEL ROSENGARTEN |
| RECORDED: | AUGUST 14, 2008 AS INSTRUMENT NO. 20081464032, OF OFFICIAL RECORDS |
| LOAN NO.: | NONE SHOWN |

IN REGARDS TO THE ABOVE-MENTIONED DEED OF TRUST THIS COMPANY WILL
REQUIRE A WRITTEN DEMAND AND ONE OF THE FOLLOWING:

    A) THE ORIGINAL NOTE, DEED OF TRUST AND SIGNED REQUEST FOR
       RECONVEYANCE.

    B) ORIGINAL NOTE AND A SUBSTITUTION OF TRUSTEE AND FULL
       RECONVEYANCE EXECUTED BY THE BENEFICIARY.

    C) FULL RECONVEYANCE FROM THE CORPORATE TRUSTEE OF RECORD (NOT
       THE BENEFICIARY).

IF YOU CANNOT OBTAIN THESE DOCUMENTS PLEASE CONTACT US AS SOON AS
POSSIBLE.

ITEM NO. 19, CONTINUED

30

ORDER NO. LA0873703

IN ADDITION, IN ACCORDANCE WITH CALIFORNIA CIVIL CODE 51.27 AND 511.6, AS IT
AFFECTS BENEFICIAL INTEREST ACQUIRED AFTER DECEMBER 31, 1974, THE
TRUSTEE WILL REQUIRE THE SPOUSE TO EITHER JOIN IN THE REQUEST OR
EXECUTE AN ASSIGNMENT TO THE BENEFICIARY. IF THE BENEFICIARY HAS SINCE
BECOME A WIDOW(ER), A CERTIFIED COPY OF THE DEATH CERTIFICATE WILL BE
REQUIRED.

20. NOTICE OF PENDENCY OF ACTION

| | |
|---|---|
| COURT: | SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF LOS ANGELES – NORTHEAST DISTRICT – PASADENA COURTHOUSE |
| CASE NO.: | 08C02022 |
| PLAINTIFF: | VILLA PACIFIC CONTRACTORS, INC., A CALIFORNIA CORPORATION |
| DEFENDANT: | FINTON CONSTRUCTION, INC. DBA FINTON ASSOCIATES, A CALIFORNIA CORPORATION; STEVEN T. DAVIS, AN INDIVIDUAL, DOES 1 THROUGH 15, INCLUSIVE |
| PURPOSE: | FORECLOSURE OF A MECHANICS' LIEN |
| RECORDED: | AUGUST 26, 2008 AS INSTRUMENT NO. 20081540643, OF OFFICIAL RECORDS |

21. A CLAIM OF LIEN

| | |
|---|---|
| LIEN CLAIMANT: | CAROLINE BAKER INTERIOR DESIGN |
| AMOUNT: | $18,616.32 |
| RECORDED: | AUGUST 29, 2008 AS INSTRUMENT NO. 20081569835, OF OFFICIAL RECORDS |

22. NOTICE OF PENDENCY OF ACTION

| | |
|---|---|
| COURT: | SUPERIOR COURT FOR THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES |
| CASE NO.: | BC 394491 |
| PLAINTIFF: | T.L. SHIELD & ASSOCIATES, INC., A CALIFORNIA CORPORATION |
| DEFENDANT: | STEVEN T DAVIS, AND DOES 1 THROUGH 100 |
| PURPOSE: | FORECLOSURE OF A MECHANICS' LIEN |
| RECORDED: | SEPTEMBER 5, 2008 AS INSTRUMENT NO. 20081606901, OF OFFICIAL RECORDS |

23. A CLAIM OF LIEN

| | |
|---|---|
| LIEN CLAIMANT: | SIERRA LANDSCAPE DEVELOPMENT |
| AMOUNT: | $75,000.00 |
| RECORDED: | SEPTEMBER 18, 2008 AS INSTRUMENT NO. 20081687481, OF OFFICIAL RECORDS |

24. A CLAIM OF LIEN

| | |
|---|---|
| LIEN CLAIMANT: | ACTION MILLWORK |
| AMOUNT: | $6,195.00 |
| RECORDED: | OCTOBER 7, 2008 AS INSTRUMENT NO. 20081794927, OF OFFICIAL RECORDS |

ORDER NO. LA0873703

25.  A CLAIM OF LIEN

    LIEN CLAIMANT:   RICHARD MACHEN
    AMOUNT:         $77,913.93
    RECORDED:      NOVEMBER 24, 2008 AS INSTRUMENT NO. 20082074247, OF
                    OFFICIAL RECORDS

    NOTICE OF PENDENCY OF ACTION

    COURT:           SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF
                    LOS ANGELES – PASADENA COURTHOUSE
    CASE NO.:       GC042412
    PLAINTIFF:      RICHARD MACHEN
    DEFENDANT:    STEVEN T. DAVIS; AND DOES 1 THROUGH 200, INCLUSIVE
    PURPOSE:      FORECLOSURE OF A MECHANICS' LIEN
    RECORDED:      APRIL 116, 2009 AS INSTRUMENT NO. 09-556558, OFFICIAL
                    RECORDS

26.  NOTICE OF PENDENCY OF ACTION

    COURT:           SUPERIOR OF THE STATE OF CALIFORNIA FOR THE COUNTY OF
                    LOS ANGELES
    CASE NO.:       08C02861
    PLAINTIFF:      CAROLINE BAKER INTERIOR DESIGN, A CALIFORNIA
                    CORPORATION
    DEFENDANT:    STEVEN T. DAVIS, AN INDIVIDUAL; JPMORGAN CHASE & CO., A
                    DELAWARE CORPORATION; AND DOES 1 TO 100, INCLUSIVE
    PURPOSE:      FORECLOSURE OF A MECHANICS' LIEN
    RECORDED:      NOVEMBER 25, 2008 AS INSTRUMENT NO. 20082088802, OF
                    OFFICIAL RECORDS

27.  A FEDERAL TAX LIEN IN FAVOR OF THE UNITED STATES OF AMERICA

    SERIAL NO.:     164771804
    DEBTOR:        STEVEN T & TERESA L DAVIS
    AMOUNT:         $416,770.39, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:      APRIL 12, 2004 AS INSTRUMENT NO. 04 0877288, OF OFFICIAL
                    RECORDS

28.  AN ABSTRACT OF JUDGMENT

    COURT:           SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
    CASE NO.:       04C00991
    DEBTOR:        STEVEN T. DAVIS AKA STEVEN DAVIS AKA STEVE DAVIS;
                    TERESA DAVIS AKA TERESA L. DAVIS AKA TERESA TEIFKE AKA
                    MRS. STEVEN DAVIS
    CREDITOR:      GRANT & WEBER, A CORPORATION
    AMOUNT:         $3,590.36, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:      OCTOBER 26, 2004 AS INSTRUMENT NO. 04 2758624, OF OFFICIAL
                    RECORDS

32

ORDER NO. LA0873703

29. A LIEN IN FAVOR OF THE STATE OF CALIFORNIA, EVIDENCED BY A CERTIFICATE
    ISSUED BY THE FRANCHISE TAX BOARD

    DEBTOR:            STEVEN T DAVIS, TERESA L DAVIS
    CERTIFICATE NO.:   04349-649904
    AMOUNT:            $45,074.57, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:          DECEMBER 14, 2004 AS INSTRUMENT NO. 20043228386, OF
                       OFFICIAL RECORDS

30. A FEDERAL TAX LIEN IN FAVOR OF THE UNITED STATES OF AMERICA

    SERIAL NO.:        217658405
    DEBTOR:            STEVEN T & TERESA L DAVIS
    AMOUNT:            $126,357.16, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:          MARCH 10, 2005 AS INSTRUMENT NO. 20050558530, OF OFFICIAL
                       RECORDS

31. A FEDERAL TAX LIEN IN FAVOR OF THE UNITED STATES OF AMERICA

    SERIAL NO.:        379245607
    DEBTOR:            STEVEN T, TERESA L DAVIS
    AMOUNT:            $156,265.90, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:          JULY 23, 2007 AS INSTRUMENT NO. 20071736603, OF OFFICIAL
                       RECORDS

32. A FEDERAL TAX LIEN IN FAVOR OF THE UNITED STATES OF AMERICA

    SERIAL NO.:        387517507
    DEBTOR:            STEVEN T, TERESA L DAVIS
    AMOUNT:            $65,063.65, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:          SEPTEMBER 5, 2007 AS INSTRUMENT NO. 20072064030, OF
                       OFFICIAL RECORDS

33. AN ABSTRACT OF JUDGMENT

    COURT:             SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
    CASE NO.:          07C01654
    DEBTOR:            STEVEN TODD DAVIS AKA STEVEN T. DAVIS; TERESA LYNNE
                       DAVIS AKA TERESA L. DAVIS AKA THERESA L. TEIFKE
    CREDITOR:          JV MCBURNEY CONCRETE CONSTRUCTION INC.
    AMOUNT:            $16,979.61, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:          MARCH 3, 2008 AS INSTRUMENT NO. 20080367148, OF OFFICIAL
                       RECORDS

    AND RECORDED MARCH 11, 2008, AS INSTRUMENT NO. 08-417304, OF OFFICIAL
    RECORDS.

33

ORDER NO. LA0873703

34. AN ABSTRACT OF JUDGMENT

    COURT:          SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
    CASE NO.:       BC366756
    DEBTOR:         STEVE DAVIS
    CREDITOR:       JOYCE J. CAMMILLERI TRUST DATED NOVEMBER 16, 2001
    AMOUNT:         $197,875.53, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:       MARCH 18, 2008 AS INSTRUMENT NO. 20080464594, OF OFFICIAL
                    RECORDS

    A WRIT OF EXECUTION TO ENFORCE SAID JUDGMENT RECORDED MAY 30, 2008, AS
    INSTRUMENT NO. 08-957998, OF OFFICIAL RECORDS.

35. A LIEN IN FAVOR OF THE STATE OF CALIFORNIA, EVIDENCED BY A CERTIFICATE
    ISSUED BY THE FRANCHISE TAX BOARD

    DEBTOR:             STEVEN T DAVIS, TERESA L DAVIS
    CERTIFICATE NO.:    08053691018
    AMOUNT:             $18,770.86, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:           MARCH 19, 2008 AS INSTRUMENT NO. 20080473921, OF OFFICIAL
                        RECORDS

36. A FEDERAL TAX LIEN IN FAVOR OF THE UNITED STATES OF AMERICA

    SERIAL NO.:     474819908
    DEBTOR:         STEVEN T, TERESA L DAVIS
    AMOUNT:         $187,978.90, AND ANY OTHER AMOUNTS DUE THEREUNDER.
    RECORDED:       SEPTEMBER 24, 2008 AS INSTRUMENT NO. 20081719153, OF
                    OFFICIAL RECORDS

37. A CLAIM OF LIEN

    LIEN CLAIMANT:  TOM GONZALES
    AMOUNT:         $15,558.00
    RECORDED:       JANUARY 7, 2009 AS INSTRUMENT NO. 20090020186, OFFICIAL
                    RECORDS

38. A CLAIM OF LIEN

    LIEN CLAIMANT:  ACTION MILLWORK
    AMOUNT:         $6,195.00
    RECORDED:       JANUARY 7, 2009 AS INSTRUMENT NO. 20090021537, OFFICIAL
                    RECORDS

39. A CLAIM OF LIEN

    LIEN CLAIMANT:  COURTESY ELECTRIC WHOLESALE CORP.
    AMOUNT:         $6,555.89
    RECORDED:       JANUARY 7, 2009 AS INSTRUMENT NO. 20090021540, OFFICIAL
                    RECORDS

34

ORDER NO. LA0873703

40. A CLAIM OF LIEN

    LIEN CLAIMANT:    ECS ELECTRICAL
    AMOUNT:    $16,050.00
    RECORDED:    JANUARY 9, 2009 AS INSTRUMENT NO. 20090032342, OFFICIAL
    RECORDS

41. A CLAIM OF LIEN

    LIEN CLAIMANT:    WHITE STAR PLASTERING CO., INC.
    AMOUNT:    $4,265.00
    RECORDED:    JANUARY 16, 2009 AS INSTRUMENT NO. 20090061234, OFFICIAL
    RECORDS

42. A CLAIM OF LIEN

    LIEN CLAIMANT:    CLASSICAL BUILDING ARTS INC.
    AMOUNT:    $35,377.00
    RECORDED:    JANUARY 20, 2009 AS INSTRUMENT NO. 20090071823, OFFICIAL
    RECORDS

43. A CLAIM OF LIEN

    LIEN CLAIMANT:    SIERRA LANDSCAPE DEVELOPMENT
    AMOUNT:    $37,847.15
    RECORDED:    FEBRUARY 27, 2009 AS INSTRUMENT NO. 2090284348, OFFICIAL
    RECORDS

44. A CLAIM OF LIEN

    LIEN CLAIMANT:    FINTON CONSTRUCTION INC., FORMALLY DOING BUSINESS AS
        FINTON ASSOCIATES, INC.
    AMOUNT:    $76,868.52
    RECORDED:    MARCH 12, 2009 AS INSTRUMENT NO. 20090356992, OFFICIAL
    RECORDS

NOTICE OF PENDENCY OF ACTION

    COURT:    SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF
        LOS ANGELES – NORTHEAST DISTRICT – PASADENA
        COURTHOUSE
    CASE NO.:    GC042568
    PLAINTIFF:    FINTON CONSTRUCTION INC., A CALIFORNIA CORPORATION
    DEFENDANT:    STEVEN T. DAVIS, AN INDIVIDUAL, ET AL
    PURPOSE:    FORECLOSURE OF A MECHANICS' LIEN
    RECORDED:    MARCH 19, 2009 AS INSTRUMENT NO. 20090398979, OFFICIAL
    RECORDS

AND RE-RECORDED APRIL 13, 2009 AS INSTRUMENT NO. 2090529737, OFFICIAL
RECORDS

16

35

ORDER NO. LA0873703

45. A CLAIM OF LIEN

LIEN CLAIMANT:    COURTESY ELECTRIC WHOLESALE ELECTRIC
AMOUNT:    $6,555.89
RECORDED:    MARCH 16, 2009 AS INSTRUMENT NO. 20090374739, OFFICIAL
RECORDS

46. A CLAIM OF LIEN

LIEN CLAIMANT:    OJ INSULATION, LP
AMOUNT:    $13,026.00
RECORDED:    MARCH 19, 200-9 AS INSTRUMENT NO. 20090395004, OFFICIAL
RECORDS

47. A CLAIM OF LIEN

LIEN CLAIMANT:    JOSE A. SANDOVAL
AMOUNT:    $68,349.78
RECORDED:    APRIL 6, 2009 AS INSTRUMENT NO. 20090493292, OFFICIAL
RECORDS

48. AN ABSTRACT OF JUDGMENT

COURT:    SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
CASE NO.:    BC 394491
DEBTOR:    STEVEN T. DAVIS
CREDITOR:    T.L. SHIELD & ASSOCIATES, INC.
AMOUNT:    $29,420.56, AND ANY OTHER AMOUNTS DUE THEREUNDER.
RECORDED:    APRIL 14, 2009 AS INSTRUMENT NO. 20090536643, OFFICIAL
RECORDS

49. ANY DEFECTS, LIENS, ENCUMBRANCES OR OTHER MATTERS WHICH NAME PARTIES WITH THE
SAME OR SIMILAR NAMES AS TERESA LYNN DAVIS AND STEVEN T. DAVIS.

36

ORDER NO. LA0873703

## REQUIREMENTS:

50. PRIOR TO THE ISSUANCE OF ANY POLICY OF TITLE INSURANCE, THE COMPANY WILL REQUIRE:

A. THE NAME SEARCH NECESSARY TO ASCERTAIN THE EXISTENCE OF MATTERS REFERRED TO IN ITEM NO. 49 HAS NOT BEEN COMPLETED. IN ORDER TO COMPLETE THIS PRELIMINARY REPORT OR COMMITMENT, WE WILL REQUIRE A STATEMENT OF INFORMATION.

IMPORTANT: PLEASE FORWARD THE STATEMENT OF INFORMATION TO US AS SOON AS POSSIBLE, BUT NO LATER THAN 10 WORKING DAYS BEFORE CLOSING. THIS WILL HELP TO AVOID ANY LAST MINUTE DELAYS WITH YOUR CLOSING AND RECORDING.

***END OF SCHEDULE B***

ORDER NO. LA0873703

## NOTES:

**NOTE:** UNLESS OTHERWISE DIRECTED IN WRITING, EQUITY TITLE COMPANY AUTOMATICALLY ISSUES THE **ALTA HOME OWNER'S POLICY** ON ALL QUALIFYING RESIDENTIAL PROPERTY SALE TRANSACTIONS.

**NOTE:** EFFECTIVE JANUARY 1, 1990, ASSEMBLY BILL 512, ENACTED AS CHAPTER 598, WILL ADD SECTION 12413.1 TO THE CALIFORNIA INSURANCE CODE DEALING WITH THE "GOOD FUNDS" ISSUE. FUNDS DEPOSITED BY:

- ☐ CASH AND BY ELECTRONIC TRANSFER (WIRED FUNDS) WILL BE AVAILABLE FOR SAME DAY DISBURSEMENTS.
- ☐ CASHIER'S CHECKS, CERTIFIED CHECKS AND TELLER'S CHECKS WILL BE AVAILABLE FOR NEXT DAY DISBURSEMENTS.
- ☐ ALL OTHER TYPES OF CHECKS WILL NOT BE AVAILABLE FOR DISBURSEMENT UNTIL THE DAY PROVIDED IN REGULATION CC ADOPTED BY THE FEDERAL RESERVE BOARD OF GOVERNORS.
- ☐ A DRAFT WILL NOT BE AVAILABLE FOR DISBURSEMENT UNTIL THE DRAFT HAS BEEN SUBMITTED FOR COLLECTION AND PAYMENT RECEIVED BY OUR BANK.

**PLEASE NOTE:** THIS COMPANY WILL MAKE DISBURSEMENTS ONLY IN THE SAME MANNER AS WHICH FUNDS ARE RECEIVED. SHOULD THIS COMPANY BE REQUESTED TO MAKE ANY DISBURSEMENTS BY ELECTRONIC TRANSFER (WIRED FUNDS), THIS COMPANY WILL REQUIRE FUNDS TO BE DEPOSITED TO OUR ACCOUNT BY ELECTRONIC TRANSFER.

WIRE TRANSFER INSTRUCTIONS ARE AS FOLLOWS:

FIRST AMERICAN TRUST
421N. MAIN STREET
SANTA ANA, CA 92701

ABA # 122241255
CREDIT: EQUITY TITLE COMPANY – **(LA0873703, DON R BENDER)**
ACCOUNT # 2000046940

(SHOULD THE ABOVE WIRE INSTRUCTION BE INCOMPLETE OR INCORRECT, WIRES WILL BE RETURNED WITHOUT NOTICE.)

SHOULD YOU HAVE ANY QUESTIONS IN THIS REGARD PLEASE CONTACT YOUR TITLE OFFICER IMMEDIATELY.

**UNLESS OTHERWISE AGREED IN WRITING, EACH OF THE PRINCIPALS AGREES, UNDERSTANDS AND ACKNOWLEDGES THAT: THE ESCROW ACCOUNT IS NON-INTEREST-BEARING; NO FINANCIAL OR OTHER BENEFITS WILL BE EARNED BY OR PROVIDED TO ANY OF THE PRINCIPALS WITH RESPECT TO SUCH FUNDS' AND EQUITY TITLE COMPANY AND ITS AFFILIATES MAY INSTEAD RECEIVE DIRECT AND INDIRECT FINANCIAL AND OTHER BENEFITS FROM THE DEPOSITORY WITH RESPECT TO SUCH FUNDS THESE BENEFITS SHALL BE TREATED AS ADDITIONAL COMPENSATION TO EQUITY TITLE COMPANY FOR ITS SERVICES AS AN ESCROW HOLDER IN THIS TRANSACTION.**

ORDER NO. LA0873703

**NOTE:** THIS COMPANY DOES REQUIRE CURRENT BENEFICIARY DEMANDS PRIOR TO CLOSING. IF THE DEMAND IS EXPIRED AND A CURRENT DEMAND CANNOT BE OBTAINED, OUR REQUIREMENTS WILL BE AS FOLLOWS:

A.  IF THIS COMPANY ACCEPTS A VERBAL UPDATE ON THE DEMAND, WE WILL HOLD AN AMOUNT EQUAL TO ONE MONTHLY MORTGAGE PAYMENT PLUS INTEREST.  THIS HOLD WILL BE UP AND ABOVE THE VERBAL HOLD THE LENDER MAY HAVE STIPULATED.

B.  IF THIS COMPANY CANNOT OBTAIN A VERBAL UPDATE ON THE DEMAND, WE WILL HOLD TOTAL PROCEEDS UNTIL A CURRENT DEMAND IS RECEIVED.

**NOTE:** THE SELLER/BORROWER HEREBY AGREES TO ALLOW EQUITY TITLE COMPANY TO HOLD SUFFICIENT FUNDS FOR ALL DELINQUENT TAXES AS SHOWN HEREIN, UNTIL SUCH TIME AS PROOF OF PAYMENT IS PROVIDED AND/OR EQUITY TITLE COMPANY IS AUTHORIZED TO PAY SAID TAXES.

39

ORDER NO. LA0873703



# PRIVACY POLICY

## We are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

## Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

## Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;

- Information about your transactions with us, our affiliated companies, or others; and

- Information we receive from a consumer reporting agency.

## Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and companies involved in real estate services, such as home warranty companies.

## Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

## Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to help ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## EXHIBIT B
## LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS  (By Policy Type)

### 1. CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990
#### SCHEDULE B
#### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims, or other matters:
    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy; or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable "doing business" laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### 2. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
#### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims, or other matters:
    (a) created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy ( except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at date of policy); or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable "doing business" laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7.  Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
    (i)   the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
    (ii)  the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
    (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
    (a) to timely record the instrument of transfer; or
    (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

### 3. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
#### WITH REGIONAL EXCEPTIONS

When the American Land Title Association Policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy, the exclusions set forth in paragraph 6 above are used and the following exceptions to coverage appear in the policy.

#### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

42

**4. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4. Any claim, which arises out of the transaction vesting in the insured estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
   (a) to timely record the instrument of transfer; or
   (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

**5. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992**
**WITH REGIONAL EXCEPTIONS**

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.

**SCHEDULE B**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3. Easements, claims of easement or encumbrances which are not shown by public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

**6. AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL TITLE INSURANCE POLICY - 1987**
**EXCLUSIONS**

In addition to exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   land use        land division        improvements on the land        environmental protection
This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless:
   a notice of exercising the right appears in the public records on the Policy Date
   the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking.
3. Title Risks:
   that are created, allowed or agreed to by you
   that are known to you, but not to us, on the Policy Date - unless they appeared in the public records
   that result in no loss to you
   that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4. Failure to pay value for your title.
5. Lack of a right:
   to any land outside the area specifically described and referred to in Item 3 of Schedule A, or
   in streets, alleys, or waterways that touch your land
This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

**7. CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 2003**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE – 2003**
Covered Risks 14 (Subdivision Law Violation), 15 (Building Permit), 16 (Zoning) and 18 (Encroachment of boundary walls or fences) are subject to Deductible Amounts and Maximum Dollar Limits of Liability
**EXCLUSIONS**

In addition to the exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   (a) building
   (b) zoning
   (c) land use;
   (d) improvements on the land
   (e) land division
   (f) environmental protection.
This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.
2. The Failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3. The right to take the land by condemning it, unless:
   (a) a notice of exercising the right appears in the public records on the Policy Date; or
   (b) the taking happened before the Policy Date and is binding on You if You bought the land without Knowing of the taking.
4. Risks:
   (a) that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   (b) that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   (c) that result in no loss to You; or
   (d) that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8 d, 22, 23, 24 or 25.
5. Failure to pay value for Your Title.
6. Lack of a right:
   (a) to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   (b) in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

**8. ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (10/13/01)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or area or the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without Knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the Insured Claimant;

(b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (this paragraph does not limit the coverage provided under Covered Risks 8, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26), or
(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the Land is situated.
5.    Invalidity or unenforceability of the lien of the Insured Mortgage, or claim thereof, which arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, except as provided in Covered Risk 27, or any consumer credit protection or truth in lending law.
6.    Real property taxes or assessments of any governmental authority which become a lien on the Land subsequent to Date of Policy.  This exclusion does not limit the coverage provided under Covered Risks 7, 8(e) and 26.
7.    Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy.  This exclusion does not limit the coverage provided in Covered Risk 8.
8.    Lack of priority of the lien of the Insured Mortgage as to each and every advance made after Date of Policy, and all interest charged thereon, over liens, encumbrances and other matters affecting the title, the existence of which are Known to the Insured at:
    (a)    The time of the advance; or
    (b)    The time a modification is made to the terms of the Insured Mortgage which changes the rate of interest charged, if the rate of interest is greater as a result of the modification than it would have been before the modification.  This exclusion does not limit the coverage provided in Covered Risk 8
9.    The failure of the residential structure, or any portion thereof to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at Date of Policy.

## 9. 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)    the occupancy, use, or enjoyment of the Land;
        (ii)    the character, dimensions, or location of any improvement erected on the Land;
        (iii)    the subdivision of land; or environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
    (e)resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.    Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## 10. 2006 ALTA LOAN POLICY (06-17-06)
### WITH REGIONAL EXCEPTIONS
When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.
### SCHEDULE B
This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One
1.    Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.    Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said real property or by making inquiry of persons in possession thereof.
3.    Easements, claims of easement or encumbrances which are not shown by public records.
4.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.    Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.    Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

## 11. 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i) the occupancy, use, or enjoyment of the Land;
        (ii) the character, dimensions, or location of any improvement erected on the Land;
        (iii) the subdivision of land; or
        (iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6
2.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## 12. 2006 ALTA OWNER'S POLICY (06-17-06)
### WITH REGIONAL EXCEPTIONS
When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.
### SCHEDULE B
This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One
1.    Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.    Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.    Easements, claims of easement or encumbrances which are not shown by public records.
4.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.    Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.    Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

| In re: STEVE DAVIS | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:09-bk-22514-SB |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 206 North Jackson Street, Suite 201, Glendale, CA 91206

A true and correct copy of the foregoing document described as  COMPLAINT FOR DECLARATORY RELIEF TO  DETERMINE PRIORITY AND EXTENT OF LIENS PURSUANT TO RULE 7001 OF FEDERAL RU   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On _____  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/29/10 | Diana Chau | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                          **F 9013-3.1**

45